UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LATOYA RAYMOND, individually and on behalf
of all others similarly situated,

                           Plaintiff,

            -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; Acting Commissioner ANTHONY
J. ANNUCCI, in his official capacity; and THE
STATE OF NEW YORK,

                           Defendants.

**CLASS ACTION COMPLAINT**

Index No.   9:20-cv-1380 (DNH/CFH)

---

## PRELIMINARY STATEMENT

1.      Plaintiff Latoya Raymond brings this civil rights action on behalf of herself and all others similarly situated to remedy ongoing, systemic disability-based discrimination in the New York State prison system.

2.      New York has created a six-month military-style boot camp program for individuals incarcerated for non-violent felonies, known as the Shock Incarceration Program ("SIP").

3.      Individuals who successfully complete the six-month program become immediately eligible for release from prison. New York does not provide any other programs offering a similar opportunity for early release from prison.

4.      Every year, the New York State Department of Corrections and Community Supervision ("DOCCS") screens out hundreds of individuals from the program and finds them ineligible to participate due to a medical or mental health condition. As a result, thousands of

individuals have been denied the early release opportunities of the SIP and kept in prison for additional months or years based solely on their disabilities.

5.      Plaintiff Latoya Raymond (hereinafter "Ms. Raymond," "Plaintiff," or "Named Plaintiff") is incarcerated in the custody of DOCCS and meets the essential eligibility requirements for participation in the SIP. However, DOCCS medically disqualified her from enrolling in the SIP because she has Type I diabetes. DOCCS refuses to provide her with an alternative six-month pathway to early release from prison.

6.      As a result of Defendants' discriminatory policies, Ms. Raymond must remain incarcerated for at least 19 months longer than if she were able to earn early release through the SIP.

7.      Ms. Raymond brings this action under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, seeking declaratory and injunctive relief, as well as nominal and compensatory damages and attorney's fees.

8.      Ms. Raymond also brings this action on behalf of a class of individuals who are similarly denied the early release benefits of the SIP because of disability, and seeks declaratory and injunctive relief and attorney's fees on behalf of the class.

## PARTIES

9.      Plaintiff LATOYA RAYMOND is currently serving a term of imprisonment in the custody of DOCCS.

10.     Ms. Raymond is currently incarcerated at Albion Correctional Facility in Albion, Orleans County, New York.

11.     Defendant NEW YORK STATE is a public entity as defined by 42 U.S.C. § 12131(1)(A).

12.    NEW YORK STATE is a recipient of federal funds.

13.    Defendant DOCCS is an arm of New York State.

14.    DOCCS is a recipient of federal funds.

15.    Defendant ANTHONY J. ANNUCCI is the Acting Commissioner of DOCCS.

16.    In that capacity, Mr. Annucci is the Chief Executive Officer of DOCCS and is charged with the overall responsibility for the proper and lawful administration of all facilities and programs within the jurisdiction of DOCCS, including the actions and conduct of those officers, agents, and/or employees who are employed by DOCCS.

17.    Mr. Annucci has the authority to promulgate, amend, and enforce rules and regulations governing the administration of all facilities and programs within the jurisdiction of DOCCS.

18.    Mr. Annucci is sued in his official capacity for injunctive relief.

## JURISDICTION

19.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(3).

## VENUE

20.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as Defendants reside in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## FACTS

### The Shock Incarceration Program

21.    In 1987, the New York Legislature established the Shock Incarceration Program ("SIP"), a six-month alternative to traditional incarceration for selected youthful, nonviolent

offenders, modeled after military "boot camps." N.Y. CORR. LAW § 865; Keri Blakinger, "New

York Prisons Offer 'Tough Love' Boot Camp Programs. But Prisoners Say They're 'Torture'

and 'Hell,'" THE APPEAL (May 21, 2019) [available at: https://theappeal.org/new-york-prisons-

offer-tough-love-boot-camp-programs-but-prisoners-say-theyre-torture-and-hell/].

22.     DOCCS currently administers the SIP at two prisons: Lakeview Shock

Incarceration Correctional Facility, a minimum security prison for both men and women located

in Brocton, Chautauqua County; and Moriah Shock Incarceration Correctional Facility, a

minimum security prison for men located in Mineville, Essex County.

23.     The SIP requires inmates to participate in rigorous physical activity and exercise,

intensive regimentation and discipline, and rehabilitative and therapeutic programs, all overseen

by "Drill Instructors." N.Y. CORR. LAW § 865(2); 7 N.Y.C.R.R. § 1800.6(a).

24.     The daily inmate schedule at each shock incarceration facility includes an early

morning regimen of physical training, military-style drilling, and cleaning of residence areas, a

complete workday, daily group meetings, high school equivalency education, substance abuse

counseling, and organized physical recreation. 7 N.Y.C.R.R. § 1800.6(b).

25.     If an individual successfully completes the six-month program, she becomes

immediately eligible for release from prison to community supervision, despite having time left

on her minimum prison sentence. N.Y. CORR. LAW § 867(4); 9 N.Y.C.R.R. § 8010.2.

26.     In the New York State prison system, individuals sentenced for non-violent

felonies generally must serve at least five-sixths of the minimum term of an indeterminate

sentence or five-sevenths of a determinate sentence. The SIP is the only program in the New

York State prison system that allows such individuals to be released earlier than those

timeframes.

27.     DOCCS has repeatedly touted the SIP as a cost-effective program that saves DOCCS money by allowing the release of individuals from prison prior to the expiration of their minimum sentences of incarceration. A 2007 fiscal analysis provided by DOCCS to the New York State Legislature stated that the early release of prisoners via the SIP had resulted in an estimated $1.18 billion in savings.

28.     When the SIP was first created, eligibility for the program was statutorily limited to individuals who were (1) under age 40, (2) not serving a sentence for a violent felony or sex offense, (3) would be eligible for release to community supervision within three years of entering prison, and (4) had not previously served a felony sentence in prison.

29.     Additionally, DOCCS established various suitability criteria that further restricted eligibility for the program. These regulatory criteria included restrictions based on an individual's history of medical and/or mental health treatment.

30.     In 2009, New York expanded the statutory eligibility criteria for the SIP as part of the Drug Law Reform Act ("DLRA").

31.     After that amendment, SIP eligibility was statutorily limited to individuals who were (1) under age 50, (2) not serving a sentence for a violent felony or sex offense, or certain other serious felonies; (3) were within three years of eligibility for release to community supervision, regardless of the length of their sentence, and (4) had not previously served a sentence for a violent felony offense.

32.     The DLRA also permitted a sentencing court to order DOCCS to enroll an eligible individual accused of a felony drug offense into the SIP.

33.     The DLRA specifically required DOCCS to create a special, six-month alternative program for any court-ordered Shock participant who was excluded from the SIP due to their need for medical or mental health treatment. 2009 N.Y. SESS. LAWS Ch. 56, § 18.

34.     Individuals who are excluded from the SIP for medical or mental health reasons and successfully complete the six-month alternative program become immediately eligible for release from prison on the same basis as individuals who complete the traditional SIP. N.Y. PENAL LAW § 60.04(7)(b)(ii).

35.     To comply with the requirement of providing an alternative program to medically disqualified individuals with judicial Shock orders, DOCCS did not create an entirely new program but instead adopted a policy of utilizing existing programs as the alternative.

36.     Specifically, DOCCS adopted a policy of enrolling such individuals in its pre-existing six-month Alcohol and Substance Abuse Treatment (ASAT) program, or Phase I of its pre-existing Comprehensive Alcohol and Substance Abuse Treatment (CASAT) program.

37.     ASAT and Phase I of CASAT consist of an intensive six-month residential substance abuse treatment program in a DOCCS facility. N.Y. CORR. LAW § 2(18); 7 N.Y.C.R.R. § 1950.2.

38.     Ordinarily, prisoners who successfully complete the ASAT program or Phase I of the CASAT program may be transferred to a work release program if eligible for a temporary release program, but otherwise remain incarcerated pursuant to their sentence of incarceration.

39.     However, individuals who successfully complete ASAT or Phase I of CASAT as an alternative to the SIP are released to the community in the same manner as if they had successfully completed the six-month SIP.

40.     From time to time, DOCCS has made other modifications and alterations to the SIP and its accompanying early release benefits for the sake of administrative convenience.

41.     For example, after enactment of the federal Prison Rape Elimination Act (PREA) required the separation of minors from the adult prison population, DOCCS was unable to house 16- and 17-year old prisoners with judicial Shock orders at its normal Shock facilities.

42.     To comply with PREA, DOCCS developed an alternative-to-Shock program for minors with judicial Shock orders. This alternative program does not include any military-style boot-camp element. Minors who successfully complete the six-month alternative program are entitled to early release from prison as if they had completed the SIP.

**DOCCS systematically excludes individuals with disabilities from the early release benefits of the SIP.**

43.     DOCCS has adopted a policy of only providing an alternative program to medically disqualified individuals who were judicially sentenced to participate in the SIP.

44.     If an individual is medically disqualified from the SIP and was not court-ordered to be enrolled in the SIP, DOCCS will not place them in an alternative program or otherwise provide the individual with a comparable pathway to early release from prison.

45.     Rather, DOCCS denies the individual all of the early release benefits that accompany the SIP, and the individual must serve the remainder of their prison sentence due to the disability-based disqualification.

46.     DOCCS' current policy and practice is to exclude from the SIP any individual who has "a serious medical problem which automatically precludes his or her participation in the program."

47.     Individuals who are otherwise eligible for the SIP are transferred to Lakeview S.I.C.F. or Moriah S.I.C.F., where DOCCS medical staff conduct a medical screening.

48.     Many individuals with disabilities wait weeks or months at a Lakeview or Moriah until medical screening is complete.

49.     Individuals who are medically disqualified usually must remain at the Shock facility for additional weeks or months until they are transferred back to a normal prison.

50.     During these waiting periods, individuals are not able to participate in the educational, vocational, and rehabilitative programs offered at DOCCS' other prisons.

51.     Because other forms of early release and parole eligibility depend on the timely completion of such programs, individuals who are medically disqualified from Shock are often worse off than if they had never been screened for Shock eligibility in the first place, as their program participation can be interrupted for months during the medical screening and disqualification process.

52.     Although individuals who are medically disqualified from the SIP do not receive any of the early release benefits of the program, they must nevertheless comply with strict rules and restrictions unique to the SIP while they are awaiting medical screening at Lakeview or Moriah. These rules and restrictions include special grooming rules requiring both men and women to shave their heads, restricted access to bathing that includes a three-minute time limit on showering, and limited permission to communicate with the outside world.

53.     DOCCS also has a policy of excluding from the SIP any individual who has been designated as having a mental health service level of 1, 2, or 3 by the New York State Office of Mental Health, the state agency that provides mental health treatment in New York state prisons.

54.     These internal mental health classification categories include all individuals who have been diagnosed with a serious mental illness, regardless of their current psychiatric condition, as well as all individuals who have been prescribed medication for any mental illness, including mental illnesses that are not considered serious.

55.     DOCCS' administration of the SIP has the effect of discriminating against individuals with disabilities, as individuals with medical or mental health conditions tend to be excluded from the program and are denied its accompanying opportunities for early release from prison.

56.     Every year, DOCCS screens several thousand eligible individuals for possible enrollment in the SIP.

57.     As a result of DOCCS' methods of administering the SIP, thousands of individuals have been denied the early release benefits of the SIP due to disability, and individuals with disabilities remain incarcerated in prison longer than similarly situated non-disabled individuals.

58.     According to DOCCS' own records, between January 2015 and May 2019:

    a.   DOCCS screened out 1,154 otherwise eligible individuals from the SIP based on medical reasons;

    b.   DOCCS screened out 3,273 otherwise eligible individuals from the SIP based on mental health reasons;

    c.   DOCCS removed 99 individuals enrolled in the SIP prior to graduation due to medical reasons;

    d.   DOCCS removed 10 individuals enrolled in the SIP prior to graduation due to mental health reasons.

59.     According to DOCCS' own records, only a small fraction of these individuals were ordered to be placed into the SIP by the sentencing court, and were therefore eligible for an alternative program under DOCCS' current policy. The vast majority of the disqualified individuals were denied a six-month pathway to early release on the basis of disability.

**Plaintiff Latoya Raymond**

60.     Plaintiff Latoya Raymond is 36-years old and is currently serving a six-year sentence of incarceration for a non-violent offense.

61.     Ms. Raymond has Type I diabetes, which substantially limits the functioning of the endocrine system. When untreated, Type I diabetes causes severe health problems and substantially limits the major life activities of seeing, eating, walking, standing, and working.

**DOCCS disqualifies Ms. Raymond from the Shock Incarceration Program because of disability.**

62.     Ms. Raymond entered DOCCS custody to begin serving her current sentence of incarceration on November 23, 2018.

63.     In November 2019, while Ms. Raymond was housed at Albion C.F., DOCCS staff screened her for admission to the SIP and found her to be eligible.

64.     On December 26, 2019, DOCCS transferred Ms. Raymond to Lakeview Shock Incarceration Facility ("S.I.C.F.") in Brocton, Chautauqua County, to begin the SIP.

65.     Upon her arrival at Lakeview S.I.C.F., DOCCS medical staff reviewed Ms. Raymond's medical records. On December 27, 2019, DOCCS medical staff medically disqualified Ms. Raymond from participating in the SIP based on her Type I diabetes diagnosis and her prescribed dosage of insulin.

66.     Ms. Raymond remained at Lakeview S.I.C.F. until January 14, 2020, when she was transferred back to Albion.

**Defendants refuse to provide Ms. Raymond with an equal opportunity for early release.**

67.     Had Ms. Raymond been given the opportunity to participate in the SIP, she would have been eligible for release from prison to parole supervision upon completion of the six-month program in July 2020.

68.     However, because she was excluded from the SIP because of her disability, she will remain incarcerated until at least February 14, 2022, her earliest possible release date.

69.     After she was medically disqualified from the SIP, Ms. Raymond repeatedly asked DOCCS staff at Albion and at its central office in Albany to enroll her in an alternative-to-Shock program that would provide her with an equal opportunity to earn early release from prison.

70.     In making these requests, Ms. Raymond stated that she should not have to remain in prison for additional years based solely on her disability.

71.     Defendants refused and continue to refuse to enroll Ms. Raymond in an alternative program that would give her an opportunity for early release equal to that available to non-disabled individuals.

**Class Allegations**

72.     Plaintiff Raymond maintains this action as a class action for declaratory and injunctive relief pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

73.     The class consists of all persons (1) currently incarcerated or who will be incarcerated in a New York state prison, (2) who are not judicially ordered to be enrolled in the SIP by the sentencing court, (3) who are or will be disqualified from the SIP for medical or

mental health reasons, (4) are otherwise eligible to enroll in the SIP, and (5) are denied an alternative six-month pathway to early release from prison.

74.     The proposed class is sufficiently numerous that joinder of all members is impracticable. Every year, Defendants disqualify hundreds of individuals from the SIP on the basis of disability.

75.     The composition of the class is necessarily fluid, as individuals enter and exit prison over time, and individuals who are already incarcerated become eligible for the SIP once they are within three years of a release date.

76.     Joinder is also impracticable because members of the class are placed in many different prisons throughout the state, and are unable to bring individual, separate actions due to incarceration and indigency.

77.     Any adjudication with respect to the Named Plaintiff's claims for injunctive relief would, as a practical matter, be dispositive of the interests of other members of the proposed Class.

78.     Plaintiff raises questions of fact and law that are common to each member of the proposed class, including, but not limited to:

   a.   Whether Defendants' method of administering the SIP has the effect of subjecting individuals with disabilities to discrimination;

   b.   Whether Defendants' use of medical and mental health eligibility criteria for the SIP tends to screen out individuals with disabilities from enjoying the benefits of the SIP;

c.  Whether DOCCS refuses to make reasonable modifications in its policies

governing the SIP to allow individuals access to an alternative pathway to

early release;

d.  Whether Defendants' policies and practices violate the ADA and the

Rehabilitation Act; and

e.  Whether Plaintiff is entitled to declaratory and injunctive relief.

79.     The Named Plaintiff's claims are typical of the class and arise from the same

policies and practices that affect each member of the class.

80.     The Named Plaintiff is capable of fairly and adequately protecting the interests of

the class. There is no conflict between the Named Plaintiff and members of the proposed class.

81.     Plaintiff is represented by attorneys employed by Prisoners' Legal Services of

New York. The undersigned counsel have ample experience litigating prisoners' rights cases and

civil rights cases on behalf of persons with disabilities, including class actions.

82.     Defendants have acted and refused to act on grounds generally applicable to the

class, and injunctive and declaratory relief is appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Disability Discrimination in Violation of Title II of the Americans with Disabilities Act**

83.     Title II of the ADA provides that "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of

services, programs, or activities of a public entity." 42 U.S.C. § 12132.

84.     Federal regulations implementing the ADA state that a public entity may not, on the basis of an individual's disability, deny her the opportunity to participate in a service or program offered to other inmates, or deny her the opportunity to "gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

85.     Federal regulations implementing the ADA state that "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." 28 C.F.R. § 35.130(b)(3).

86.     Federal regulations implementing the ADA also require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R. § 35.130(b)(7)(i).

87.     Federal regulations implementing the ADA prohibit the imposition or application of "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8).

88.     Plaintiff has Type I diabetes, which substantially limits the function of the endocrine system and is a disability under the ADA.

89.     Plaintiff meets the essential eligibility requirements for participation in the SIP and receipt of the early release benefits accompanying successful completion of the SIP.

90.     Defendants have excluded Plaintiff from participation in the SIP and denied her the accompanying opportunity for early release from prison because of her disability.

91.     By denying Plaintiff the opportunity for early release to community supervision due to her medical disqualification from the SIP, Defendants are utilizing a program eligibility criterion that has the effect of subjecting Plaintiff to discrimination on the basis of her disability.

92.     By denying Plaintiff the opportunity for early release from prison because of her medical disqualification from the SIP, Defendants are utilizing a program eligibility criterion that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the SIP with respect to individuals with disabilities.

93.     By denying Plaintiff the opportunity to participate in an alternative-to-Shock program, Defendants are refusing to make a reasonable modification to their policies and practices for administration of the SIP, thereby subjecting Plaintiff to unlawful disability-based discrimination.

## SECOND CLAIM FOR RELIEF

**Disability Discrimination in Violation of Section 504 of the Rehabilitation Act**

94.     Section 504 of the Rehabilitation Act of 1973 provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

95.     Federal regulations implementing Section 504 state that a recipient of federal financial assistance may not, on the basis of an individual's disability, deny her the opportunity to participate in a service or program offered to other inmates, or deny her "an equal opportunity

to achieve the same benefits that others achieve in the program or activity." 28 C.F.R.

§ 42.503(b)(1)(i)-(ii).

96.     Federal regulations implementing Section 504 state that a recipient may not

utilize criteria or methods of administration that either purposely or in effect discriminate on the

basis of disability, or defeat or substantially impair accomplishment of the objectives of the

recipient's program or activity with respect to persons with disabilities. 28 C.F.R. § 42.503(b)(3).

97.     DOCCS and the State of New York are recipients of federal financial assistance

for purposes of Section 504.

98.     Plaintiff has Type I diabetes, which substantially limits the function of the

endocrine system and is a disability under Section 504.

99.     Plaintiff meets the essential eligibility requirements for participation in the SIP

and receipt of the early release benefits accompanying successful completion of the SIP.

100.    Defendants have excluded Plaintiff from participation in the SIP and denied her

the accompanying opportunity for early release from prison because of her disability.

101.    By denying Plaintiff the opportunity for early release from prison due to her

medical disqualification from the SIP, Defendants are utilizing a program eligibility criterion that

has the effect of subjecting Plaintiff to discrimination on the basis of her disability.

102.    By denying Plaintiff the opportunity for early release from prison because of her

medical disqualification from the SIP, Defendants are utilizing a program eligibility criterion that

has the purpose or effect of defeating or substantially impairing accomplishment of the

objectives of the SIP with respect to individuals with disabilities.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff and issue an order:

(a)     Deeming this action related to *Goodall v. New York State Department of Corrections and Community Supervision et al.*, No. 19-cv-1359;

(b)     Certifying, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, a plaintiff class defined as all persons (1) currently incarcerated or who will be incarcerated in a New York state prison, (2) who are not judicially ordered to be enrolled in the SIP by the sentencing court, (3) who are or will be disqualified from the SIP for medical or mental health reasons, (4) are otherwise eligible to enroll in the SIP,  and (5) are denied an alternative six-month pathway to early release from prison;

(c)     Declaring that Defendants' method of administering the Shock Incarceration Program violates the ADA and Section 504 of the Rehabilitation Act;

(d)     Preliminarily and permanently enjoining Defendants to provide Plaintiff and the class access to an alternative program that provides equal opportunity to achieve the early release benefits of the SIP;

(e)     Awarding Plaintiff nominal and compensatory damages;

(f)     Awarding Plaintiff and the class reasonable attorney's fees and costs; and

(g)     Granting such other relief as the Court deems just and proper.


DATED:  November 6, 2020
        Buffalo, NY

                                                    /s/Andrew Stecker
                                                Andrew Stecker, Esq., NDNY #518899
                                                Michael Cassidy, Esq., NDNY #601118
                                                PRISONERS' LEGAL SERVICES OF NEW YORK

Karen Murtagh, Esq., Exec. Dir.
14 Lafayette Square, Suite 510
Buffalo, NY  14203
astecker@plsny.org
(716) 854-1007