UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LATOYA RAYMOND and JAN JAVIER
SANTIAGO GARCIA, individually and on
behalf of all others similarly situated,

                               Plaintiffs,

      -v-                             9:20-CV-1380

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; ANTHONY J.
ANNUCCI, Acting Commissioner, in
his official capacity; and THE STATE OF
NEW YORK,

                               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                   OF COUNSEL:

PRISONERS' LEGAL SERVICES OF    ANDREW A. STECKER, ESQ.
   NEW YORK-BUFFALO OFFICE
Attorneys for Plaintiffs
14 Lafayette Square, Suite 510
Buffalo, New York 14203

PRISONERS' LEGAL SERVICES OF    JAMES M. BOGIN, ESQ.
   NEW YORK-ALBANY OFFICE
Attorneys for Plaintiffs
41 State Street M112
Albany, New York 12207

HON. LETITIA JAMES             ROBERT J. ROCK, ESQ.
Attorney General for the         Assistant Attorney General
   State of New York
Attorneys for Defendants
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On November 6, 2020, plaintiffs Latoya Raymond ("Raymond") and Jan Javier Santiago Garcia ("Garcia" and together "plaintiffs"), filed a complaint in this district against defendants the New York State Department of Corrections and Community Supervision ("DOCCS"), its Acting Commissioner Anthony J. Annucci, and New York State as a whole (together "defendants").  Plaintiffs essentially allege that defendants discriminated against them in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act").  In addition, plaintiffs claim that there is an entire class of similarly situated inmates in need of similar relief.

At its core, plaintiffs' complaint alleges that defendants' administration of the Shock Incarceration Program ("SIP") and the Comprehensive Alcohol and Substance Abuse Treatment program ("CASAT") discriminates against disabled people.  To challenge that policy on a statewide level, plaintiffs now ask this Court to certify this case as a class action under Federal Rule of Civil

Procedure ("Rule") 23. That motion, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. **BACKGROUND**

In 1987, New York's legislature crafted SIP. Dkt. 18-6, p. 3.[1] DOCCS, as the state's prison system, was charged with administering it. *Id.* SIP's guiding vision was an intense, six-month program aimed at effectively rehabilitating young, non-violent inmates. *Id.* Chosen candidates would endure a grueling program of exercise and manual labor in an atmosphere of extreme regimentation and discipline. *Id.* at 12. At the same time, SIP also includes rigorous drug treatment and education programs. *Id.* at 3.

As much a hardship as SIP may seem, there is a carrot to go along with the stick. Specifically, an inmate with a determinate sentence of imprisonment who successfully completes SIP is eligible for immediate conditional release. N.Y. CORR. LAW § 867(4). Otherwise, an inmate sentenced for a non-violent felony must serve at least five-sixths of the minimum term for an indeterminate sentence or five-sevenths of a determinate one. N.Y. CORR. LAW § 803.

In 2009, the legislature expanded SIP eligibility through the Drug Law Reform Act. 2009 N.Y. SESS. LAWS Ch. 56, Part L. As part of that expansion,

---

[1] Pagination Corresponds with CM/ECF.

a sentencing court was permitted to order drug offenders directly into SIP.
*Id.* at Part AAA § 18.

Obviously enough, though, not every inmate is physically or mentally
capable of completing the more demanding portions of the program.  As a
result, DOCCS carefully screens inmates with a wide range of health
conditions for eligibility.  Dkt. 18-5, pp. 8-9.  In addition, an inmate who "is
found to have a serious medical problem," is ineligible to be sent to SIP.  *Id.*
at 2.  Finally, an inmate with a mental health level of 1, 2, or 3—which at the
very least means an inmate with any mental condition that might need
pharmaceutical intervention—is also per se excluded from SIP.  *Id.* at 2, 11.

Given the possibility that an inmate might be sentenced into SIP, but not
eligible by DOCCS's standards, New York's legislature required DOCCS to
come up with an alternate program.  2009 N.Y. SESS. LAWS Ch. 56, Part
AAA § 18.  Critically, an inmate who successfully completed the alternative
still must become eligible for immediate release.  *Id.*

DOCCS decided that rather than crafting a new program from scratch, it
would simply transfer inmates sentenced into—but physically and/or
mentally ineligible for—SIP to the already existing CASAT program.
Dkt. 18-7, p. 24.  CASAT does not include the same taxing physical demands
of SIP, but instead consists of "intensive substance abuse treatment services."
N.Y. CORR. LAW § 2(18).

4

Though that solution may seem reasonable enough, there's a catch.  In the ordinary case, successful completion of CASAT allows for the completing inmate to transfer to a work-release program.  N.Y. CORR. LAW § 2(6), (18). However, an inmate who completes the same six-month CASAT program after being ordered into it by the sentencing court—rather than volunteering for it—is eligible for full release.  *Compare id.* at § 2(18), *with* 2009 N.Y. SESS. LAWS Ch. 56, Part AAA § 18.

To sum that up, an inmate who does not have an impairment that precludes him or her from SIP may be sentenced to it or may volunteer for it. In either case, he or she can earn eligibility for release in six months by completing the program successfully.  But an inmate who has an impairment can *only* earn eligibility for release in six months if he or she happened to be sentenced to SIP from the jump.  *See* Dkt. 18-7, pp. 24-25 (providing guidance for operating CASAT as alternative for court-ordered SIP and allowing graduating inmates to be eligible for release).

Plaintiffs complain that that system unjustly infringes on the rights of disabled persons, and each believes that she or he is a prime example.  To their point, neither plaintiff was sentenced into SIP.  Dkts. 18-2 ("Raymond Dec."), ¶ 14; 18-3 ("Garcia Dec."), ¶ 15.  For her part, Raymond applied for SIP and was initially accepted.  Raymond Dec. ¶ 8.  When she transferred to

the facility where her program was scheduled to begin, though, she was turned down because she has Type I diabetes.  *Id.* ¶ 10.

Garcia's story is not dissimilar.  He passed the initial screening for SIP eligibility and was transferred into a facility to begin the program.  Garcia Dec. ¶ 8.  Once there, though, DOCCS medical staff took an X-ray of his back and determined that his "severe degenerative disc disease, spondylosis, and spinal stenosis" disqualified him from SIP.  *Id.* ¶¶ 7, 10.

On November 6, 2020, plaintiffs filed the present complaint.  Dkt. 1.  At bottom, plaintiffs argue that defendants' policy of only permitting disabled persons to earn eligibility for immediate release if they were sentenced into SIP while permitting non-disabled inmates to volunteer for SIP and earn early release whether they were sentenced into it or not violates their rights under the ADA and the Rehabilitation Act.[2]  *See generally id.*, *passim*. Plaintiffs are after injunctive and declaratory relief to halt defendants' alleged violations of the rights of the disabled, as well as nominal and compensatory damages.  Dkt. 11 ("Compl."), ¶¶ (c-f).  On June 1, 2021, plaintiffs moved to certify a class of similarly situated inmates to stretch that

---

[2] At least, that seems to be plaintiffs' theory of the case.  Though the complaint is not perfectly clear as to the specific harm it alleges, plaintiffs cannot complain that disabled inmates are excluded from SIP when CASAT exists as an alternative that also allows for early release.  2009 N.Y. SESS. LAWS Ch. 56, Part AAA § 18.  The harm, then, must be the additional game of chance involved in making a judicial order a prerequisite for an inmate protected by the ADA or Rehabilitation Act having a path to an early release.  In any case, except for a few unique wrinkles in certain cases, plaintiffs' claims under both statutes are treated identically.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

injunction to reach every inmate with a disability or impairment that

excludes them from SIP.  Dkt. 18.  This decision follows.

## III. <u>LEGAL STANDARD</u>

Class certification is the exception, not the rule, so the party moving for

class certification "must affirmatively demonstrate" compliance with Rule 23.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In practice, that

means that a would-be class plaintiff is saddled with proving entitlement to

class certification by a preponderance of the evidence.  *Teamsters Local 445*

*Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 202

(2d Cir. 2008).

Carrying that burden first calls for a "rigorous analysis" of whether the

case meets Rule 23(a)'s requirements.  *Roach v. T.L. Cannon Corp.*, 778 F.3d

401, 405 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33

(2013)).  There are four: "(1) numerosity; (2) commonality; (3) typicality; and

(4) adequacy of representation."  *Glatt v. Fox Searchlight Pictures, Inc.*,

811 F.3d 528, 538 (2d Cir. 2016).

In addition, the Second Circuit has noted that a purported class must "be

defined using objective criteria that establish a membership with definite

boundaries," under what courts refer to as the "ascertainability doctrine."

*In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).  Finally, the class must

"be defined in such a way that anyone within it would have standing."
*Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).

But even if Rule 23(a) is satisfied, the plaintiff must also prove that one of the three subcategories of permissible class actions under Rule 23(b) fit the particular case.  *See* FED. R. CIV. P. 23(b) (noting that class action may be maintained if Rule 23(a) is satisfied and if the case fits criteria for one of three class action forms).  "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Comcast*, 569 U.S. at 33-34 (internal citations and quotation marks omitted).

## IV. <u>DISCUSSION</u>

### A. <u>Rule 23(a)</u>

Against that backdrop, the Court begins by examining whether plaintiffs have proven that they meet each of the six requirements of Rule 23(a).

### 1. <u>Numerosity</u>

The first is numerosity.  As its name suggests, numerosity asks whether the proposed class is "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  Numerosity is typically presumed if the class stretches to include forty members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Even so, numerosity turns on "all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The relevant considerations include judicial economy, the geographic dispersion of class members, the financial resources of class members, and the ability of claimants to institute individual suits. *Id.*

Plaintiffs claim that they have established numerosity because 4,427 people were excluded from SIP on the basis of a physical or mental impairment between January 2015 and May of 2019 alone. Dkt. 18-7, p. 3. Of course, some—and perhaps many—of those impaired inmates may have been judicially ordered into SIP, in which case they would not be members of the class. Even so, it is still safe to assume that the proposed class is a fair sight more than forty members. Thus, the proposed class can be presumed to meet the numerosity requirement. *Hyde Park*, 47 F.3d at 483.

In any case, as plaintiffs correctly point out, inmates who are candidates for SIP by definition will be eligible for release within three years. N.Y. CORR. LAW § 865(1) (requiring that SIP candidate must be no more than three years removed from release eligibility). Given the pace of the average federal civil suit, it would be difficult for any members of the proposed class to manage to win relief before their release renders their case moot. *See Williams v. Conway*, 312 F.R.D. 248, 251-52 (N.D.N.Y. 2016) (noting that numerosity is often met in prison context because of "fluid composition" of

prison population).  Accordingly—and especially because defendants do not bother to argue the point—the Court is satisfied that plaintiffs have established numerosity.  *See, e.g.*, *id.* (finding numerosity met for deaf inmates at prison where plaintiff estimated seventy class members).

## 2. **Commonality**

Next, the Court considers whether "there are questions of law or fact common to the class" under Rule 23(a)(2).  In other words, the Court considers whether the potential class plaintiffs "have suffered the same injury" which can be proven by a "common contention" that is "of such a nature that it is capable of classwide resolution."  *Dukes*, 564 U.S. at 350, 353.  "Even a single common question will do."  *Id.* at 359 (cleaned up).

In other words, commonality is met where the determination of a single issue will resolve it as to "the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  Plaintiffs posit that they have presented just such a single common question for the class: does defendants' policy violate the ADA and the Rehabilitation Act because it requires disabled inmates to be sentenced into relief that non-disabled inmates can simply volunteer for?

For their part, defendants wonder just how common that question would be.  According to them, the decision of whether to exclude an inmate from SIP is highly individualized, involving frequent and holistic evaluations of candidates' suitability for the program.  Along those lines, defendants liken

10

plaintiffs' complaint to the one the Supreme Court rejected in *Dukes*. 564 U.S. 338.

In that case, the Supreme Court held that without a demonstrable, unified policy on the defendant's part that causes discrimination against a protected group, the precise contours of the discrimination each proposed class member experiences would look decidedly different. *See Dukes*, 564 U.S. at 359. By extension, defendants claim that every inmate is excluded from SIP for unique reasons and thus a class action would not effectively advance their collective goals.

Defendants' argument misses the point. Plaintiffs are not objecting to DOCCS's decision to exclude them—or any inmate protected by the ADA and Rehabilitation Act—from SIP. Instead, plaintiffs object that a protected inmate must be sentenced into SIP to have a chance to become eligible for release within six months. Meanwhile, a non-protected inmate can simply volunteer for the same benefit.[3] *See* Dkt. 18-7, pp. 24-25.

Plaintiffs style this disadvantage as systemic disparate treatment between disabled and non-disabled inmates, or at least those inmates protected under

---

[3] For the same reason, defendants' objection that plaintiffs improperly rely on statistical evidence also fails. *See Dukes*, 564 U.S. at 356 (finding statistical evidence of disparate impact insufficient to establish commonality when there is no uniform policy being challenged). As plaintiffs point out, they only cite to statistics to establish numerosity. Their commonality arguments hinge on the structure of defendants' administration of SIP and CASAT, which is the exact sort of uniform policy the Supreme Court was looking for in *Dukes*. *See id*.

the ADA and Rehabilitation Act and those who are not. *See Maccharulo v.*
*N.Y. State Dep't of Corr. Servs.*, 2010 WL 2899751, at *3
(S.D.N.Y. July 21, 2010) (noting that ADA and Rehabilitation Act guarantee
equal access to public benefits and prohibit disparate treatment between
disabled and non-disabled people).

Thus, the more granular questions of whether a particular inmate was
properly excluded from SIP, or whether he or she is disabled as the ADA and
Rehabilitation Act define that term are beside the point as far as
commonality goes. Instead, there is a common question of whether
defendants' refusal to create an avenue for inmates protected by the ADA or
Rehabilitation Act to volunteer for the opportunity to earn release eligibility
in six months amounts to a denial of public benefits in violation of those
statutes. *See Henrietta D.*, 331 F.3d at 273 (noting that ADA requires public
entities to ensure disabled individuals have meaningful access to public
benefits); *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85
(2d Cir. 2004) (same for Rehabilitation Act).

Answering that one question would resolve the proposed class's interests
in "one stroke." *Dukes*, 564 U.S. at 350. Naturally, then, the commonality
requirement is met. *See, e.g.*, *Williams*, 312 F.R.D. at 253 (finding
commonality met where inmates claimed that jail's refusal to provide
equipment and policies for deaf and hard-of-hearing inmates violated ADA).

### 3. **Typicality**

Typicality, the third prerequisite to class certification under Rule 23(a), is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992). Given that description (not to mention the similarity of the words themselves), it should come as little surprise that commonality and typicality "tend to merge into one another." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Nevertheless, the two differ in that typicality looks at the proposed class members' claims or defenses while commonality looks at the more granular legal or factual questions underpinning those claims and defenses. *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 293 (S.D.N.Y. 2019). Along the same lines, commonality looks to the definition of the class generally, while typicality considers whether the class plaintiffs' allegations are typical of those of the class at large. *Id.*

Defendants argue that typicality is impossible on these facts considering the number of individualized questions at play. In fact, they see four: (1) what medical or mental health condition led to a particular class plaintiff's exclusion from SIP? (2) is that medical or mental health condition a

disability within the meaning of the ADA? (3) would the inmate have been eligible for SIP in the absence of that disability? and (4) is there an alternative pathway to a six-month release for that inmate?

From the outset, a list of individualized questions does not, by itself, undermine typicality. Rather, that argument strikes the Court as more in line with a claim that common issues do not predominate over individualized ones. True enough, that would be an issue the Court would need to consider if plaintiffs were trying to certify a class under Rule 23(b)(3). *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (describing requirement that common issues predominate over individual ones in Rule 23(b)(3) class).

But these plaintiffs are after certification under Rule 23(b)(2), and need only establish typicality. Through that lens, the unique questions defendants pose do not change the fact that the underlying claims that the proposed class would bring ultimately take the same shape as each other's and as plaintiffs'. *See Westchester Indep. Living Ctr.*, 331 F.R.D. at 293 (describing typicality as based around same claims or defenses). Plaintiffs are not challenging their individual exclusion from SIP, but are challenging the disparate treatment of inmates protected by the ADA and Rehabilitation Act under defendants' current administrative regime.

In that light, looking at the relief plaintiffs are actually seeking distills defendants' first three supposedly individualized questions into one broad

one: are inmates with medical and/or mental impairments disparately precluded from the six-month pathway to release offered by SIP due to DOCCS policies?[4]  Plaintiffs claim that they are, and that they are entitled to relief as a consequence.  What is more, they argue that they share that claim with the proposed class.  Thus, that claim is typical.

Defendants' final proposed individualized question fares no better.  After all, plaintiffs have provided evidence that SIP or the judicially mandated variant of CASAT is the *only* pathway to a six-month release before five-sixths of an indeterminate sentence or five-sevenths of a determinate sentence has been served.  *See* N.Y. CORR. LAW § 803 (requiring inmate to serve five-sixths of indeterminate sentence or five-sevenths of determinate sentence).

Tellingly, defendants have not rebutted plaintiffs' showing by pointing to other six-month programs to earn eligibility for release, let alone ones that would only be available based on individualized circumstances.  If it had, that showing might have demonstrated some individualized defenses undermining plaintiffs' showing of typicality.  *See Westchester Indep. Living*

---

[4] To the extent that defendants are arguing that class plaintiffs would need to individually prove that they are disabled, even assuming that that would be a question in need of answering (an assumption that the discussion below regarding ascertainability will complicate, if not destroy), that cashes out to an argument that individualized issues predominate.  Once again, whether common or individual issues predominate has no bearing when plaintiffs are seeking certification under Rule 23(b)(2).  *Bouaphakeo*, 577 U.S. at 453.

*Ctr.*, 331 F.R.D. at 294-98 (describing and rejecting various unique defenses to class plaintiffs' claims as undermining typicality).

In any case, "typicality may be assumed where the nature of the relief sought is injunctive and declaratory." *Westchester Indep. Living Ctr.*, 331 F.R.D. at 293 (cleaned up).  And although plaintiffs seek ancillary damages, their primary concern appears to be pursuing injunctive and declaratory relief.  Compl. ¶¶ (c-f).  Accordingly, plaintiffs have met their burden of establishing their claims' typicality.  *See, e.g.*, *Williams*, 312 F.R.D. at 253 (finding typicality met based on jail's failure to provide services for disabled inmates).

### 4. **<u>Adequacy</u>**

Rule 23(a)'s fourth and final explicit requirement is adequacy.  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  A proposed class representative is adequate if he or she has "an interest in vigorously pursuing the claims of the class" while having "no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011).

Defendants also object to plaintiffs' adequacy as class representatives.  But they do not explain what, precisely, they are objecting to.  Much as

16

defendants may argue that either of the proposed class plaintiffs could have washed out of SIP and thus failed to reap the benefits of early release, that argument once again misunderstands the principal harm that plaintiffs allege.  The problem is not that they lost out on an early release, it is that they were denied access to the *opportunity* for an early release based on their alleged status as disabled persons.  *See Maccharulo*, 2010 WL 2899751, at *3 (noting that ADA or Rehabilitation Act claim must be based on disparate treatment between disabled and non-disabled people).

Defendants' arguments that plaintiffs would make poor class representatives because they cannot represent the interests of the mentally disabled is just as unavailing.  If plaintiffs can prove that defendants' administration of SIP and CASAT discriminates against those protected by the ADA and Rehabilitation Act, plaintiffs would benefit in precisely the same way that a mentally disabled class plaintiff would benefit.

What is more, those benefits are not a zero-sum game: plaintiffs prevailing at trial would do nothing to undercut other class members' benefits, regardless of their disability.  Plaintiffs therefore have "an interest in vigorously pursuing" the goals of the class and no interests antagonistic to those goals.  *See In re Literary Works*, 654 F.3d at 249.  Plaintiffs have thus proven by a preponderance of the evidence that they are adequate class representatives.

**5. <u>Ascertainability</u>**

Having taken care of Rule 23(a)'s four explicit requirements, the Court turns to its two implicit ones.  The first of these is ascertainability.  To be ascertainable, a class must be "defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec.*, 862 F.3d at 269.  The Second Circuit has cautioned, however, that ascertainability is a "modest threshold requirement" that only interferes with class certification "if a proposed class definition is indeterminate in some fundamental way." *Id.*

In fact, district courts in this Circuit consider the ascertainability requirement to be even more muted where the plaintiffs seek certification under Rule 23(b)(2).  *See, e.g.*, *Floyd v. City of N.Y.*, 283 F.R.D. 153, 171-72, (S.D.N.Y. 2012).  After all, the need to accurately determine class membership is significantly reduced when the class action seeks injunctive relief that would benefit the class whether they are joined in the action or not.  *See id.* at 172 ("It would be illogical to require precise ascertainability in a suit that seeks no class damages").  Accordingly, a Rule 23(b)(2) class is ascertainable as long as its "general demarcations" are clear.  *See id.*

Plaintiffs' proposed class described above passes through the modest threshold of ascertainability.  *In re Petrobras*, 862 F.3d at 269.  Plaintiffs have provided hard numbers for inmates rejected from SIP based on physical

or mental impairments from 2015 to 2019.  Dkt. 18-7, p. 3.  Those inmates would be members of the proposed class as a matter of course, provided that they were not also sentenced into SIP.  That is certainly an ascertainable class.

To the extent that defendants would urge the opposite conclusion, they essentially lump their typicality and ascertainability arguments together, which means they can primarily be rejected for the same reasons.  Only one part of defendants' objection to ascertainability merits further discussion.  Specifically, defendants argue that for each member of the proposed class, the Court would have to determine whether the impairment that resulted in exclusion from SIP amounts to a disability within the meaning of the ADA or the Rehabilitation Act.  Defendants are mistaken.

After all, a plaintiff's interests are still protected by the ADA and Rehabilitation Act if he or she is "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012).  Plaintiffs allege that defendants fit this bill because they exclude the proposed class on the basis of "actual or perceived physical or mental impairment[s]."  *Id.*  As a result, the possibility that some class plaintiffs might be truly disabled while others have an impairment that does not rise to the level of a disability does

not appear to pose an obstacle to class certification.  *See, e.g.*, *Lacy v. Dart*, 2015 WL 1995576, at *2-6 (N.D. Ill. Apr. 30, 2015) (certifying class action under Rule 23(b)(2) of inmates in wheelchairs despite possibility that some class members would not fit definition of disability because "plaintiffs' claims do not require an individual evaluation of plaintiffs' disabilities or the accommodations allegedly provided, but rather ask the court to determine whether . . . defendants' actions comply with federal statutes").

In any case, even if there *was* a need to determine whether each individual proposed class member was disabled as defined by the ADA and Rehabilitation Act, that would only raise the question of whether it would be administratively feasible to ascertain class membership.  But the Second Circuit explicitly rejected the administrative feasibility standard in favor of the lower hurdle this Court explained above.  *In re Petrobras*, 862 F.3d at 264 (rejecting administrative feasibility requirement and only requiring objective criteria that establish membership with definite boundaries).

Whether a person is disabled is an "objective criteri[on]" that has definite boundaries, and thus even if a member of the proposed class would have to establish that he or she is disabled within the meaning of the ADA and Rehabilitation Act, that requirement would not preclude a finding of ascertainability.  *See, e.g.*, *Westchester Indep. Living Ctr.*, 331 F.R.D. at 299

(finding proposed class of people with "mobility disabilit[ies]" ascertainable even if that proposed class involves future members).

All told, it is simple enough to determine whether a person was sentenced into and/or rejected by SIP on the basis of a physical or mental impairment, and that is the only relevant feature to determining membership in the class. Especially because plaintiffs principally seek injunctive relief that would benefit disabled persons whether they participate in the class action or not, plaintiffs have adequately proven that the proposed class is ascertainable. *See, e.g.*, *Floyd*, 283 F.R.D. 171-72 (finding class seeking injunctive relief ascertainable so long as "general demarcations" are clear).

**6. <u>Standing</u>**

That leaves the Court to consider only the final implicit requirement of Rule 23(a): standing.  Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney*, 443 F.3d at 263 (internal citations and quotation marks omitted). Standing has three components: (1) a concrete, particularized, and "actual or imminent" injury; (2) a cause and effect relationship between the conduct complained of and the plaintiff's injury; and (3) a likelihood that the injury will be redressed by a favorable outcome in the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

To establish standing under the ADA and rehabilitation act specifically, a plaintiff must prove: (1) a past injury under the ADA; (2) raise a reasonable inference that discriminatory treatment will continue; and (3) raise a reasonable inference that the plaintiff intended to return to the subject location or partake in the subject program.[5] *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013).  Standing under both the ADA and the Rehabilitation Act is intended to be broad.  *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009).

When a plaintiff seeks injunctive or declaratory relief, a likelihood that the injury will be redressed requires that there be a "real and immediate threat of repeated injury," not simply "[p]ast exposure to illegal conduct." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465 (S.D.N.Y. 2013) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)).

As a prerequisite to federal jurisdiction, standing does not simply disappear in the class-action context.  *See Denney*, 443 F.3d at 263.  But neither must every member of the class provide evidence as to his or her personal standing.  *Id.*  Instead, the class must be fashioned such that its members have standing as a matter of course.  *Id.* at 264.

---

[5] Though *Kreisler* only considered the elements of standing for an ADA claim, 731 F.3d at 187-88, because ADA and Rehabilitation Act claims are treated identically, the same elements of standing apply to the latter statute as well, *Henrietta D.*, 331 F.3d at 272.

As its next argument against class certification, defendants insist that the proposed class would not ensure that every member has standing. Specifically, they argue that an inmate who has not yet been rejected by SIP has suffered no invasion of a legally protected interest. Defendants are wrong.

DOCCS has a clear policy that inmates with serious medical conditions be automatically excluded from SIP. Dkt. 18-5, p. 2. Similarly, DOCCS policy states in no uncertain terms that any inmate whose mental health condition may require pharmaceutical intervention is per se ineligible for SIP. *Id.* at 2, 11 (explaining that inmates are ineligible for SIP if they have mental health level of 1, 2, or 3 and defining level 3 or higher as potential need for short-term chemotherapy).

In addition, it is worth keeping in mind that the proposed class is limited to inmates who "are or *will be* disqualified" from SIP for medical or mental health reasons. In other words, membership in the class is limited to inmates who have applied and been rejected or who have a condition that meets the criteria for per se rejection. Thus, even if a member of the proposed class has not applied for SIP, they would nevertheless be facially ineligible based on DOCCS's on-the-book policies. In light of the way the proposed class is framed, then, if a proposed class member has not applied for admission into SIP and been rejected, their application would be futile per se.

*See Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (noting that plaintiff need not apply for benefit and be rejected to have standing if substantial showing is made that application would be futile based on clearly established policy).

That ineligibility in turn closes off a proposed class member's ability to volunteer for a program permitting them to earn release eligibility in six months.  By extension—and regardless of whether they have gone through the formality of being rejected by SIP—all members of the proposed class are denied access to a program from which non-disabled people can benefit.

That is a past and present injury under the ADA and Rehabilitation Act. *Kreisler*, 731 F.3d at 187-88.  To the extent that the members of the proposed class will still have their impairments and still be automatically excluded from SIP going forward, there is a "real and immediate" threat of that injury recurring.  *Id.*; *Kassman*, 925 F. Supp. 2d at 465.  And of course, given the substantial benefit of early release from prison, the proposed class would also have established a high probability that they would continue to want to partake in the program's benefits.  *Kreisler*, 731 F.3d at 187-88.  Put together, standing is satisfied.

## B. Rule 23(b)(2)

Rule 23(b)(2) allows for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class,

so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Typically, then, Rule 23(b)(2) comes into play when litigants seek "institutional reform in the form of injunctive relief." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 379 (S.D.N.Y. 2012) (internal citations and quotation marks omitted).

Basically, a Rule 23(b)(2) class can be certified when "a single injunction would provide relief to each member of the class." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015). The nature of that relief need not be identical for every member, so long as the same injunction provides some benefit to the class as a whole. *See id.*

However, "when monetary relief is requested in tandem with injunctive and declaratory relief, the court must determine whether the requested monetary relief predominates over the claims for equitable relief." *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 18 (2d Cir. 2003). If monetary damages are the predominant goal, then certification under Rule 23(b)(2) cannot follow. *See id.* at 18-19.

Defendants' arguments that plaintiffs have failed to prove that their proposed class satisfies Rule 23(b)(2)'s requirements are twofold. First, they argue that plaintiffs have failed to show that they have "acted . . . on grounds that apply generally to the class." FED. R. CIV. P. 23(b)(2). That argument crosses the same wires that Defendants' commonality and typicality

arguments did and must be rejected for the same reasons.  One more time, DOCCS's uniform policy is to declare inmates with a wide range of impairments ineligible for SIP.

However, it only allows participants in its self-styled alternative program, CASAT, the same crucial benefit of SIP—eligibility for release in six months—if they happened to be sentenced into it.  Thus, based on DOCCS's uniform (if legislatively ordered) policy, inmates with impairments must rely on chance to receive a benefit that is available to non-disabled inmates on a voluntary basis.  That is plainly an action that applies generally to the class, and defendants' first argument must be rejected.

Second, Defendants argue that a class action would not be a manageable or efficient means of dealing with these disputes, and thus class certification would be inappropriate for this alternative reason as well.  But addressing that same uniform policy just discussed though injunctive relief would, "in one stroke," address the rights of potentially thousands of inmates statewide. Dkt. 18-7, p. 3 (noting thousands of inmates rejected from SIP based on physical or mental impairments); *see Dukes* 564 U.S. at 350.  Given the common questions at issue in this case, the Court is satisfied that giving one clear answer to those questions would be substantially more efficient than repeating the same answer a thousand times over.

In other words, plaintiffs have established that a single injunction addressing Defendants' allegedly discriminatory policy of precluding disabled or otherwise impaired inmates from earning release eligibility through a six-month program would resolve their concerns.[6]  They have thus met every requirement of Rule 23(a) and established that class certification under Rule 23(b)(2) would be proper.  The Court must therefore certify plaintiffs' proposed class.  *Cf., e.g.*, *Westchester Indep. Living Ctr.*, 331 F.R.D. at 300-02 (finding class certification under Rule 23(b)(2) appropriate when students requested changes to state university campuses to allow for access for disabled students).

---

[6] As for what that injunction would be, however, that is another matter.  There can be no doubt that DOCCS lacks the authority to make all inmates—or even just all disabled inmates—eligible for release upon completion of CASAT.  *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006) ("New York's Department of Correctional Services has no . . . power to alter a sentence . . . .").  By extension, plaintiffs have no bone to pick with DOCCS itself.  Instead, their real dispute is with New York's legislature for enacting SIP and leaving them ineligible for its benefits of an early release.  But of course, enjoining defendants to alter New York's legislative scheme would be impossible "without an initial policy determination of a kind clearly for nonjudicial discretion" and would, in any case, demonstrate a profound "lack of the respect due [to] coordinate branches of government."  *Baker v. Carr*, 369 U.S. 186, 216 (1962).  In other words, telling New York how to manage its prison populations and criminal sentences would be an involved political question that must be left to the State.  *See id.*

In essence, then, plaintiffs' only possible avenue for relief is to argue that SIP's legislative and regulatory framework directly conflicts with—and is therefore preempted by—the ADA and Rehabilitation Act.  *See Mary Jo C.*, 707 F.3d at 161-64 (describing potential for state law to be preempted by the ADA).  Given the relatively muted mandatory injunctive authority just described, the only available remedy that the Court can imagine at this time would be the wholesale destruction of the SIP framework.  Though that outcome would address the disparate treatment plaintiffs complain of for the class as a whole, it is possible that it would not be the precise remedy they were after when they began this case.  The parties are encouraged to discuss settling this matter if they would prefer to avoid risking SIP's being entirely dismantled.

## V. **CONCLUSION**

It is tough to dispute that DOCCS is between a rock and a hard place here.  Virtually everything they are doing to draw plaintiffs' ire is mandated by New York's legislature.  In fact, even the "rigorous physical activity" that is part and parcel of SIP was expressly ordered by the statutes directing DOCCS to create SIP in the first place.  N.Y. CORR. LAW § 865(2) (tasking DOCCS with creating program involving "rigorous physical activity, intensive regimentation[,] . . . discipline[,] . . . rehabilitation[,] . . . therapy[,] and programming").

Still, the fact remains that defendants as a whole may be administering a program that deprives disabled and otherwise-impaired inmates of the opportunity to volunteer for a program with substantial benefits.  If that proves to be the case, then it may also be that that program infringes on rights protected by the ADA and the Rehabilitation Act.  But this much is certain: whether defendants' administration of SIP and CASAT violates the ADA and Rehabilitation Act will be decided in one take, not in piecemeal litigation.

Therefore, it is

ORDERED that

1. Plaintiffs' motion for certification of this case as a class action under
   Federal Rule of Civil Procedure 23(b)(2) is GRANTED;

28

2.  Plaintiffs' claims under Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973 are certified as a Rule 23(b)(2) class action on behalf of a class defined as all persons who are (1) currently incarcerated or who will be incarcerated in a New York state prison; (2) not judicially ordered to be enrolled in the SIP by the sentencing court; (3) are or will be disqualified from the SIP for medical or mental health reasons; (4) otherwise eligible to enroll in the SIP; and (5) denied an alternative six-month pathway to early release from prison; and

3.  Named plaintiffs Latoya Raymond and Jan Javier Santiago Garcia are appointed as class plaintiffs and the Prisoners' Legal Services of New York are appointed as class counsel.

IT IS SO ORDERED.

Dated:  January 11, 2022
       Utica, New York.

David N. Hurd
U.S. District Judge